

**FILED & ENTERED**

**MAR 16 2022**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** craig      **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>CHRISTY HAMMOND<br><br>Debtor.<br>. | Bankruptcy Case: 6:17-bk-18617-MH<br>Chapter: 7<br><br>**MEMORANDUM OPINION AND ORDER: (1) DENYING MOTION TO DISALLOW HOMESTEAD EXEMPTION; AND (2) GRANTING MOTION FOR TURNOVER OF PROPERTY**<br><br>Hearing Date:  December 1, 2021<br>Time:             11:00 a.m.<br>Courtroom:     301 |

I. **PROCEDURAL BACKGROUND**

On October 16, 2017, Christy Hammond ("Debtor") filed a Chapter 7 voluntary petition. Among the assets of the estate is certain real property located at 5918 Ridgegate Dr., Chino Hills, CA 91709 (the "Property"). On January 29, 2018, Debtor obtained a discharge.

On April 23, 2018, the Chapter 7 Trustee ("Trustee") filed a notice of assets, subsequently employing an attorney and a real estate broker. Debtor opposed Trustee's request to employ a real estate broker, and the Court approved the application after a hearing held on March 27, 2019.

On October 16, 2019, Trustee filed: (1) a motion for turnover of property; and (2) an adversary complaint against Kenneth Hammond ("Mr. Hammond") seeking turnover of property from Debtor's non-filing spouse. On October 30, 2019, Debtor filed an opposition to the motion for turnover, while also increasing her homestead exemption to $175,000.

On November 20, 2019, Trustee filed an objection to Debtor's claimed homestead exemption. Trustee argued that Debtor has not established that she is entitled to claim the increased homestead exemption set forth in CAL. CODE CIV. P. § 704.730(a)(3)(B). On December 4, 2019, Debtor filed her opposition. Debtor argued that Trustee has the burden of proof in objecting to the claimed homestead exemption, and that Trustee did not meet this burden. Alternatively, Debtor argued that she adequately established her entitlement to the $175,000 homestead exemption. Specifically, Debtor argued that the increased homestead exemption is based on the alleged disability of her non-filing spouse, Mr. Hammond. On December 11, 2019, Trustee filed a reply. Prior to the hearing on December 18, 2019, the Court issued a tentative ruling that stated the Court was inclined to find that it would assign Trustee the burden of proof but that an evidentiary hearing was necessary and appropriate. The matter was continued for the parties to conduct discovery.

Trustee filed a turnover motion on March 25, 2021, pursuant to 11 U.S.C. §521(a), seeking turnover of $13,409.34 in bank accounts ending in 6216, 0825, 1166, 7530 as of the date of the petition. On April 8, 2021, Debtor filed an opposition. On April 14, 2021, Trustee filed a reply. On May 3, 2021, the Court ordered turnover as to three of the bank accounts (those ending in 0825, 1166, and 7530), totaling $2,588.

On August 6, 2021, the Court entered an order setting an evidentiary hearing on Trustee's motion to disallow homestead exemption and Trustee's motion seeking turnover of the funds in the bank account ending in 6216 (the "Account"). On September 20, 2021, Trustee filed its brief, exhibit list, and witness list. The next day, Debtor filed her brief, exhibit list, and witness list.

On October 4, 2021, the Court conducted an evidentiary hearing. At the conclusion of the hearing, the Court permitted the parties to file post-trial briefs. On October 21, 2021, Trustee filed his post-trial brief. On November 15, 2021, Debtor filed her post-trial brief. On November 22, 2021, Trustee filed his reply brief. On December 1, 2021, the Court held a status conference, and the parties informed the Court that they had not settled the matter.

## II. FACTUAL BACKGROUND

Mr. Hammond served in the U.S. Navy and was discharged in 2009. Mr. Hammond worked in the boiler room. During the time Mr. Hammond served in the Navy, a pressure valve on a boiler room in a different ship malfunctioned, injuring several people on board. Mr. Hammond was aware of the incident and the incident was in some form highlighted by his supervisors in training materials or instructions.

After leaving the Navy, Mr. Hammond briefly held jobs at Lowe's and Trader Joe's. He also worked in the oil fields in Los Alamitos for approximately one year in 2013-2014, checking for leaks and doing

some maintenance. Mr. Hammond testified that during his time working in the oil fields "loud noises, banging" and smells triggered PTSD symptoms.

In 2015, Mr. Hammond applied for VA disability. Mr. Hammond's VA disability rating was 80% as of the petition date, although the rating was subsequently increased to 100%. At the time of the petition date, Mr. Hammond was receiving slightly more than $500/month in VA disability benefits.

In 2015, Debtor and Mr. Hammond opened Hambones Barbershop ("Hambones"). Mr. Hammond testified that the intention in opening Hambones was to make him a "productive citizen," and that his wife wanted to get him "on the working side of society." [Kenneth Hammond deposition, pg. 12]. While previously living in Long Beach, Mr. Hammond enjoyed spending time at a barbershop named Razorbacks where he enjoyed the atmosphere and, ostensibly, wanted to recreate that atmosphere with Hambones.

The Court was not presented with a very clear description of how Hambones operated on a daily basis or of Mr. Hammond's role in the operation. Mr. Hammond appears to have done some maintenance and light plumbing at Hambones [Kenneth Hammond deposition, pg. 14].
On a "normal" or, possibly, a "good" day, Mr. Hammond appears to have done inventory at the beginning and end of the day [Kenneth Hammond deposition, pgs. 15, 18]. This process, however, did not appear to be intensive, with Mr. Hammond testifying that it took fifteen to twenty minutes [Kenneth Hammond deposition, pg. 23]. Mr. Hammond also testified that he would occasionally pick up supplies [Kenneth Hammond deposition, pg. 27]. He also appears to have done some routine clerical work.

During the testimony, Trustee made efforts to get Mr. Hammond to take responsibility for completing tasks that had been vaguely attributed to either him or his wife. Mr. Hammond generally responded by denying substantial involvement in these tasks. Other than the maintenance and light clerical work identified above, the only other task that Mr. Hammond claimed credit for was the selection of hair products, although this turned out to mean he simply selected the hair products that were used at his

former hang-out, Razorbacks, which was operated by a friend. Mr. Hammond also appears to have participated in the "cultural" aspects of the barbershop, such as lunches and getting beer.

In May 2015, Mr. Hammond began seeing Dr. Robert Gordon, a psychiatrist, for anxiety. Dr. Robert Gordon subsequently diagnosed Mr. Hammond with generalized anxiety disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder. Dr. Gordon testified that these diagnoses impair Mr. Hammond's ability to concentrate and perform task, especially under noisy, distracting conditions. Dr. Gordon further testified that an individual with Mr. Hammond's symptoms would not be able to "participate meaningfully in operating [a] barber shop" when his symptoms were active. Dr. Gordon also testified that PTSD symptoms can be triggered by sensory stimuli that relate to the source of the trauma. Mr. Hammond testified that at Hambones these triggers would occur, but that Mr. Hammond was able to "just walk out the door and leave."

Also at issue during the evidentiary hearings was a Wells Fargo bank account ending in 6216 (the "Account") which held $10,821 (the "Funds") as of the petition date. The Account first came to light in a declaration filed on January 20, 2021, docket number 90, which provided that the Account "was utilized by Ken Hammond, myself (Debtor) and/or Hambones Barber Shop, LLC." The source of the funds, specifically what, if any, amount is traceable to VA funds is disputed by the parties, as is the extent and consequences of any commingling of funds.

### III. LEGAL ANALYSIS

*A. Burden of Proof on Objection to Homestead Exemption*

As a preliminary matter, the parties disagree on the burden of proof when a trustee files an objection to a claimed exemption. FED. R. BANKR. P. Rule 4003(c) states: "In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed." Trustee argues that the Supreme Court, however, held in the case of *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15 (2000) that

the burden of proof should be determined by reference to state law. In *Raleigh*, the Supreme Court was considering whether the burden of proof, in the context of a claim objection, is determined by reference to state law. Citing cases dating prior to World War II, the Supreme Court stated that "we have long held the burden of proof to be a 'substantive' aspect of a claim. That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." *Id*. at 20-21.

The Supreme Court also stated:

> Congress of course may do what it likes with entitlements in bankruptcy, but there is no sign that Congress meant to alter the burdens of production and persuasion on tax claims. The Code in several places, to be sure, establishes particular burdens of proof. But the Code makes no provision for altering the burden on a tax claim, and its silence says that no change was intended.

*Id*. at 21-22 (citation omitted). The above excerpt ended with footnote 2, which states:

> The legislative history indicates that the burden of proof on the issue of establishing claims was left to the Rules of Bankruptcy Procedure. The Bankruptcy Rules are silent on the burden of proof for claims; while Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim (the name for the proper form for filing a claim against a debtor) is "prima facie evidence of the validity and amount of the claim," this rule does not address the burden of proof when a trustee disputes a claim. The Rules thus provide no additional guidance.

*Id*.

Thus, the Supreme Court made it clear that Congress was permitted to preempt state law burdens in the drafting of the Bankruptcy Code. Specifically, the Supreme Court cited 11 U.S.C. §§ 362(g), 363(o), 364(d)(2), 547(g), and 1129(d) as examples of instances where the Code specifically articulates a burden of proof. While under principles of preemption it is clear that Congress may delineate an applicable

burden in the Bankruptcy Code, in the context of an objection to a homestead exemption, it is the Federal Rules of Bankruptcy Procedure, not the Bankruptcy Code itself, which articulates a burden of proof. As Trustee points out in its reply brief, 28 U.S.C. § 2072 provides that federal rules of procedure "shall not abridge, enlarge or modify any substantive right." Given that the Supreme Court has determined that a burden of proof is substantive, it would appear that a provision in the Federal Rules of Bankruptcy Procedure could not alter the applicable burden of proof absent a Code provision providing for such alteration.

Since the *Raleigh* decision in 2000, a number of Court have addressed the issue of whether *Raleigh* dictates that FED. R. BANKR. P. Rule 4003(c) is invalid when a debtor exempts property under state law, and where state law identifies its own burden for claiming that exemption. In California, CAL. CODE CIV. P. § 703.580(b) provides that the party claiming the exemption has the burden of proof. Therefore, in California, the applicable state law provision is in conflict with FED. R. BANKR. P. Rule 4003(c).

The first case to contain an extended analysis of this conflict, post-*Raleigh*, appears to be *In re Greenfield*, 289 B.R. 146 (Bankr. S.D. Cal. 2003). *In re Greenfield* noted that "the propriety of Rule 4003(c) in a case such as this has been called into question." *Id*. at 148. Ultimately, *In re Greenfield* stated the following:

> The court in *Raleigh* did indeed look to state law in placing the burden. However, *Raleigh* dealt with a situation – an objection to a proof of claim – for which neither the Bankruptcy Code nor the Bankruptcy Rules provide a burden of proof . . .
>
> Contrarily, in the case of exemptions and objections thereto, the Rules do provide a specific and clear allocation of the burden – Rule 4003(c). Accordingly, the *Raleigh* case may not apply.

*Id*. at 149.

Then, in 2005, a concurring opinion at the Bankruptcy Appellate Panel, which like *In re Greenfield* did not actually reach a conclusion on the issue, appeared to lean the opposite direction:

> There is reason to doubt the validity of the allocation, in Federal Rule of Bankruptcy Procedure 4003(c), of the burden of proof to the party objecting to a claim of exemption, especially an exemption claimed under state law.
>
> At least with respect to state-law exemptions, the better view, after the Supreme Court's decision in *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 195, 147 L.Ed.2d 13 (2000), may be that, if challenged, the debtor has the burden to establish entitlements to a claim of exemption under state law by the same standard that applies in the courts of that state. If so, then the objecting party does not properly bear the burden of proof.
>
> The post-*Raleigh* view necessarily calls into question the validity of Rule 4003(c), which expressly allocates the burden of proof on claims of exemption: "the objecting party has the burden of proving that the exemptions are not properly claimed."
>
> The basic problem is that Rule 4003(c) suffers from being a procedural rule that attempts to accomplish a substantive task, it being settled by *Raleigh* that a burden of proof in bankruptcy is substantive and generally is regarded as an essential element of a claim itself.

*In re Davis*, 323 B.R. 732, 741 (B.A.P. 9th Cir. 2005) (Judge Klein, concurring opinion).

The excerpts from *In re Greenfield* and *In re Davis* reveal the operative legal question – is FED. R. BANKR. P. Rule 4003(c) invalid as a procedural rule which modifies substantive rights? Judge Klein, ten years after his concurrence in *In re Davis*, wrote a well-researched opinion in *In re Tallerico* supplementing his concurrence. Several courts, primarily in California, have agreed with his position. *See, e.g.*, *In re Diaz*, 547 B.R. 329 (B.A.P. 9th Cir. 2016); *In re Williams*, 556 B.R. 456 (Bankr. C.D. Cal. 2016); *In re Vaughn*, 558 B.R. 897 (Bankr. D. Ala. 2016); *In re Pashenee*, 531 B.R. 834 (Bankr. E.D. Cal. 2015). Other courts have concluded that FED. R. BANKR. P. Rule 4003(c) is still valid despite *Raleigh*. *See, e.g.*, *In re Nicholson*, 435 B.R. 622 (B.A.P. 9th Cir. 2010) (partially abrogated on other grounds); *Matter of Hoffman*, 605 B.R. 560 (Bankr. N.D. Ga. 2019); *In re Weatherspoon*, 605 B.R. 472

(Bankr. S.D. Ohio 2019). Many courts have offered extended analysis of the issue without arriving at a conclusion. *See, e.g.*, *In re Aubry*, 558 B.R. 333 (Bankr. C.D. Cal. 2016) (Judge Kwan) (expressing skepticism that FRBP 4003(c) is invalid); *In re Gilman*, 544 B.R. 184 (Bankr. C.D. Cal. 2016) (Judge Kaufman) (stating that caselaw invalidating FRBP 4003(c) was "compelling," but acknowledging that "there is no binding authority that explicitly changes the burden allocation set forth in *Carter* or FRBP 4003(c)"); *In re Thiem*, 443 B.R. 832 (Bankr. D. Ariz. 2011) (noting dispute and presuming FRBP 4003(c) still valid for purposes of opinion). Most commonly, courts simply assume that FED. R. BANKR. P. Rule 4003(c) is still valid, possibly unaware of a split in caselaw on the issue. *See, e.g.*, *In re Hanson*, 903 F.3d 793 (8th Cir. 2018); *In re Nuara*, 607 B.R. 116 (Bankr. E.D.N.Y. 2019); *In re Haworth*, 604 B.R 394 (Bankr. D. Idaho 2019). Every circuit court, including the Ninth Circuit, that has addressed the burden of proof when an objection to a claimed exemption is filed, has continued to refer to FED. R. BANKR. P. Rule 4003(c) post-*Raleigh*. *See, e.g.*, *In re Lee*, 889 F.3d 639 (9th Cir. 2018) ("Moreover, Rule 4003(c) provides that in any hearing under the rule, 'the objecting party has the burden of proving that the exemptions are not properly claimed.'"); *In re Hanson*, 903 F.3d 793 (8th Cir. 2018) ("It is the trustee's burden to demonstrate that a claimed exemption is improper."); *In re Fehmel*, 2010 WL 1287618 (5th Cir. 2010); *In re Hodes*, 402 F.3d 1005 (10th Cir. 2005) ("The objecting party bears the burden of proof on an objection to a claimed exemption.").

Judge Klein, in *In re Tallerico*, 532 B.R. 774 (Bankr. E.D. Cal. 2015), after an extended historical discussion, concluded that "Rule 4003(c) offends the Bankruptcy Rules Enabling Act with respect to state-law exemptions and must give way to the state statute." This conclusion, that FED. R. BANKR. P. Rule 4003(c) constitutes an impermissible modification of substantive rights, carries significant logical appeal given its simplicity and given the plain language of 28 U.S.C. § 2072.

The Court, however, cannot escape certain countervailing considerations. First, in *Raleigh*, the Supreme Court quickly turned to the Federal Rules of Bankruptcy Procedure to determine whether a burden of proof was articulated. 530 U.S. 15 at 22, n.2 ("The legislative history indicates that the burden of proof on the issue of establishing claims was left to the Rules of Bankruptcy Procedure. The Bankruptcy Rules

are silent on the burden of proof for claims; while Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim (the name for the proper form for filing a claim against a debtor) is 'prima facie evidence of the validity and amount of the claim,' this rule does not address the burden of proof when a trustee disputes a claim. The Rules thus provide no additional guidance."). The Supreme Court, by writing "that the burden of proof on the issue of establishing claims was left to the Rules of Bankruptcy Procedure," acknowledges that Congress may delegate its authority to set the burden of proof. Indeed, delegation of Congressional authority when an "intelligible principle" is articulated has long been a feature of the American government. *See, e.g.*, *Mistretta v. U.S.*, 488 U.S. 361, 372 (1989) ("Applying this 'intelligble principle' test to congressional delegations, our jurisprudence has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives."). As *Mistretta* makes clear, the Supreme Court rarely interferes with the exercise of delegated legislative authority. *Id.* at 373 ("[W]e have upheld, again without deviation, Congress' ability to delegate power under broad standards.").

This observation finds support in a Bankruptcy Appellate Panel decision from 2010:

> As the Supreme Court has recognized, bankruptcy exemptions are authorized and regulated by Congress in § 522 of the Bankruptcy Code. Although state law may control the 'nature and extent' of state law exemptions, subject to the limitations set forth in the Bankruptcy Code, the manner in which such exemptions are to be claimed, set apart, and awarded, is regulated and determined by the federal courts, as a matter of procedure in the court of bankruptcy administration, as to which they are not bound or limited by state decisions or statutes. Because Congress has regulated the allowance of exemptions in bankruptcy, the Code and Rules may alter burdens of proof relating to exemptions, even if those burdens are part of the "substantive" rights under state law. In implementing the provisions of § 522(l), Rule 4003(c) places the burden of proof on the objecting party.

*In re Nicholson*, 435 B.R. 622, 633 (B.A.P. 9th Cir. 2010) (partially abrogated on other grounds). In support of the above excerpt, *In re Nicholson* cited the Supreme Court's statement that "Congress of course may do what it likes with entitlements in bankruptcy," and the Advisory Committee Note to Rule

4003(c) which states that "This rule is derived from § 522(l) of the Code." *Id*; *see also* 9 COLLIER'S ON BANKRUPTCY ¶ 4003.04 (16th ed. 2019) ("[T]he better-reasoned decisions recognize that the rule simply reflects the burden placed on an objector by section 522(l), a federal statute that overrides state law on this issue under the Supremacy Clause.").

While the Court does not conclude that the approach represented by *In re Nicholson* is the better-reasoned approach, for multiple reasons outlined below, the Court concludes that FED. R. BANKR. P. Rule 4003(c) remains valid.

First, the Supreme Court approves the Federal Rules of Bankruptcy Procedure. *Raleigh* was decided in 2000, so the Supreme Court has had twenty-one years, during which time there have been many rule changes, to modify or eliminate FED. R. BANKR. P. Rule 4003(c). It has not done so. Additionally, the Supreme Court in *Raleigh* stated that the burden of proof has long been considered "substantive" --- citing pre-World War II cases in support of the proposition. Those cases long predate FED. R. BANKR. P. Rule 4003(c), yet the Supreme Court approved the rule despite the presence of those cases. Given these observations and the ambiguity regarding the continuing validity of FED. R. BANKR. P. Rule 4003(c), this Court would be remiss to invalidate an existing rule of bankruptcy procedure on the basis that it may violate *Raleigh*. This is especially so when, to this Court's knowledge, every circuit court that has cited the burden of proof for an objection to a homestead exemption has continued to refer to FED. R. BANKR. P. Rule 4003(c) even after *Raleigh*.

Rather, this Court agrees with the analysis set forth in *In re Weatherspoon*, 605 B.R. 472, 482 (Bankr. S.D. Ohio 2019):

> Although *Raleigh* was decided in the context of an objection to a proof of claim and did not involve Bankruptcy Rule 4003(c), some bankruptcy courts have questioned the continued viability of the rule in light of the Supreme Court's holding in that case. These cases are well-reasoned, and Ohio courts place the burden of proof on the party claiming the exemption. Thus, it could be argued that here the Debtor should shoulder the burden

of proving the exemption was properly claimed. But even if decisions such as *Tallerico* are correctly decided, it is not for this Court to determine that *Raleigh* overruled *Zingale* by implication; instead, it must follow *Zingale* until the Supreme Court or the Sixth Circuit overrules it.

If trial courts disregard binding precedent and binding legal provisions on the basis that they have been implicitly overruled, especially when there are legitimate arguments to the contrary, judicial hierarchy and the entire doctrine of legal precedent would be undermined.[1] As such, the Court finds Trustee has the burden of proof in objecting to Debtor's homestead exemption.

As an aside, as discussed below, even if the Court concludes, *arguendo*, that the burden of proof is assigned to Debtor, Debtor has satisfied her burden of proof establishing entitlement to the increased homestead exemption.

B.  *Standard for Increased Homestead Exemption under 704.730(a)(3)(B)*

CAL. CIV. PROC. CODE § 704.730(a)(3)(B) stated, at the time the petition was filed:

> (a) The amount of the homestead exemption is one of the following:
>> (3) One hundred seventy-five thousand dollars ($175,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:
>>> (B) A person physically or mentally disabled who as a result of that disability is unable to engage in substantial gainful employment. There is a rebuttable presumption affecting the burden of proof that a person receiving

---

[1] While none of these opinions are binding on this Court, the Court notes that of the four cases Trustee cites in his argument as to Debtor's eligibility for the increased homestead exemption, three explicitly state that the burden of proof is on the objecting party, i.e. the Chapter 7 Trustee. *See In re Neff*, 2014 WL 448885 at *8 (B.A.P. 9th Cir. 2014); *In re Rolland*, 317 B.R. 402, 413 (Bankr. C.D. Cal. 2004); *In re Rostler*, 169 B.R. 408, 411 (Bankr. C.D. Cal. 1994) (decided before *Raleigh*). The fourth case, *In re Gilman*, 544 B.R. 184 (Bankr. C.D. Cal. 2016), cited in this section, discussed the competing views, and did not take a position, noting that there was no binding authority to change the burden of proof assigned by Ninth Circuit caselaw and the federal rules, but also noting that the minority analysis was compelling. 544 B.R. at 196-97.

> disability insurance benefit payments under Title II or
> supplemental security income payments under Title XVI of
> the federal Social Security Act satisfies the requirements of
> this paragraph as to his or her inability to engage in
> substantial gainful employment.

*In re Rostler*, 169 B.R. 408, 411 (Bankr. C.D. Cal. 1994) provides the applicable test for eligibility under § 704.730(a)(3)(B):

> The plain language of C.C.P. § 704.730(a)(3)(B), however, established two requirements. First, the debtor has a mental or physical disability. Second, as a result of the mental or physical disability, the debtor is unable to engage in substantial gainful employment. When asserting the exemption in bankruptcy, these conditions must exist as of the date of the petition.

Trustee has not contested whether Debtor has a disability, so the dispute between the parties is related to the "substantial gainful employment" prong of the § 704.730(a)(3)(B) test. There is not a uniform test for "substantial gainful employment" in the applicable caselaw. The Court in *In re Rostler* decided to look at cases interpreting that phrase in the context of the Social Security Act. *Id*. Specifically, the court looked to *Corrao v. Shalala*, 20 F.3d 943, 947 (9th Cir. 1994), which stated that: "Substantial gainful activity is work activity that 'involves doing significant physical and mental activities' on a full or part-time basis, and is the 'kind of work usually done for pay or profit, whether or not a profit is realized.'" The Bankruptcy Appellate Panel further expanded on this test in *In re Neff*:

> In reviewing the language of § 704.730(a)(3)(B), we observe that the term "gainful employment" is qualified by the adjective "substantial." Work activity is "substantial" if it involves significant physical or mental activities. Thus, it would appear that from the statute and test set forth in *In re Rostler*, that "any work" or "part-time work" may not necessarily rise to the level of "substantial" or "gainful" employment. The term "substantial" also modifies the term "gainful," which suggests that the debtor must be physically, mentally and emotionally able to work enough hours, at a high enough net wage, to contribute materially to his or her support.

2014 WL 44885 at *10 (B.A.P. 9th Cir. 2014).

Caselaw leaves unresolved exactly how much a debtor must be capable of earning in order to be determined to be capable of "substantial gainful employment." *In re Rostler* opined that "[i]t is not necessary that Debtor generate sufficient income for support for her to be considered gainfully employed." 169 B.R. at 413. This statement in *In re Rostler* was cited approvingly in *In re Gilman*. As noted in the excerpt from *In re Neff*, however, this reading appears to divorce the modifier "substantial" from "gainful employment." *See also In re Morris*, 2010 WL 9485973 at *4 (Bankr. E.D. Cal. 2010) ("[T]he term "substantial" also modifies the term "gainful," which suggests that the debtor must be physically, mentally and emotionally able to work enough hours, at a high enough net wage, to overcome the inherent costs of that employment, such as transportation, and materially contribute to his or her support.").

Finally, the Court also notes that the California exemption provision, CAL. CIV. CODE § 704.730(a)(3)(B) provides for a rebuttable presumption that a debtor is not able to engage in substantial gainful employment if they receive "disability insurance benefit-payments under Title II or supplemental security income payments under Title XVI of the federal Social Security Act."

C. *Application of Standard to Facts of Case*

First, the Court finds that Mr. Hammond was legally disabled as of the petition date. Debtor has submitted uncontroverted evidence that Mr. Hammond had a disability rating from the VA as of the date of the petition and Trustee has not advanced any argument suggesting that Mr. Hammond was not "disabled" for the purposes of CAL. CIV. CODE § 704.730(a)(3)(B) as of the petition date.

- 14

Second, the Court finds that Mr. Hammond's work at Hambones does not constitute substantial gainful employment. The evidence submitted to the Court demonstrates that Mr. Hammond's work related to Hambones was limited in scope, was not of a nature that was mentally or physically demanding, and required, at most, only a few hours per week. The Court finds that the work performed by Mr. Hammond (some maintenance, brief inventory checks, and occasional collection of supplies) does not constitute "significant physical and mental activities."

In the absence of any direct evidence that Mr. Hammond performed significant services for Hambones, Trustee contends that the bankruptcy petition and Debtor's tax returns, which both identify Debtor as "unemployed," are inconsistent with the conclusion that it was Debtor, not Mr. Hammond, who performed significant services for Hambones. The Court finds that this inconsistency is outweighed by the testimony of Dr. Gordon, which the Court finds to be credible and compelling, and upon which the Court concludes that Mr. Hammond requires significant day-to-day monitoring when performing tasks. Finally, the Court notes that the nature of this "employment," owning a small barbershop, may not even necessarily require significant services be provided by either Mr. Hammond or Debtor, and the existence of passive income does not preclude a finding that Mr. Hammond was not able to engage in "substantial gainful *employment*."

Third, the Court finds that Mr. Hammond was incapable of engaging in substantial gainful employment as of the petition date. In reaching this conclusion, the Court primarily relies upon Mr. Hammond's uncontroverted employment history, which included three brief stints of employment after leaving the Navy, and the testimony of Dr. Gordon, which made clear that Mr. Hammond's functionality on a day-to-day basis is uncertain.

On pages seven through nine of the post-trial brief filed as docket number 155, Trustee identifies a list of reasons why Mr. Hammond was capable of engaging in substantial gainful employment. The Court notes that for some of these tasks, the evidence submitted to the Court simply demonstrates that either

- 15 -

Debtor or Mr. Hammond did the task, and, as such, that evidence does not refute the testimony of the Hammonds and Dr. Gordon.[2] For other tasks, the evidence submitted indicates that the task was irregular, required minimal effort, or permitted Mr. Hammond to operate on his own schedule. Mr. Hammond's ability to complete tasks of this nature simply does not translate into an ability to hold "substantial gainful employment."

Trustee also emphasizes the testimony of Debtor at a deposition that either Debtor or Mr. Hammond was at Hambones at all times.[3] The Court rejects the proffered implication that Debtor spent significant time at Hambones, especially during Debtor's brief period of employment as a receptionist. The Court notes that Debtor's testimony that "[t]here was never a given time where we were not there" is (1) inconsistent with a variety of other testimony and, more importantly, (2) taken out of context. Debtor's answer was given in response to the question: "What's your best estimate of the amount of time where – on any given week where neither you nor Mr. Hammond was at the barber shop?". As such, the answer can be fairly interpreted to mean that on a *normal* week, either Debtor or Mr. Hammond was at the barber shop at all times. Furthermore, Debtor quickly supplemented her testimony by saying that "I was there at all times" and Debtor also testified that the barber shop hours were irregular, and sometimes was only open for a small fraction of the day. More importantly, the entire strain of testimony refers to generalities (i.e. a typical week, a typical day) – at no point does Trustee specifically inquire about the short period of time that Debtor worked as a receptionist. Therefore, the Court concludes that this testimony does not establish that Mr. Hammond did, or was capable of doing, significant work at Hambones.

Ultimately, the Court has received testimony from Dr. Gordon establishing that Mr. Hammond's day-to-day functionality was significantly impaired. The Court has also received testimony from Debtor and from Mr. Hammond that Mr. Hammond required extensive supervision and only was entrusted with relatively menial tasks. The Court considers this evidence sufficient to establish that Mr. Hammond was

---

[2] The Court also note that Trustee's post-trial brief characterizes Mr. Hammond as the actor for a variety of tasks that the testimony clearly describes as tasks jointly completed by Mr. Hammond and Debtor.
[3] The post-trial briefs miscite this testimony. This testimony occurs at page 162 of Christy Hammond's deposition.

not capable of substantial, gainful employment. Trustee has not rebutted this evidence with any direct evidence or medical examination of Mr. Hammond that would warrant a different conclusion.

### D. Standard for Motion for Turnover

11 U.S.C. § 521(a)(4) requires a debtor to surrender to the Chapter 7 Trustee all property of the bankruptcy estate. 11 U.S.C. § 541(a) defines property of the state broadly, to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(2) includes community property in the definition of property of the estate. And CAL. FAM. CODE § 760 provides that all property acquired by a married person during marriage is community property unless an exception applies.

Debtor presents two distinct legal arguments as to why the Funds at issue are either not: (a) property or the bankruptcy estate; or (b) subject to turnover. First, Debtor argues that the Funds are Mr. Hammond's separate property, pointing to CAL CODE EVID. § 662, which states: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only clear and convincing proof." Second, Debtor argues that the Funds are subject to an exemption of Mr. Hammond pursuant to 38 U.S.C. § 5301(a)(1). 38 U.S.C. § 5301(a)(1) reads, in pertinent part:

> Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

E. *Application of Standard to Facts of Case*

The Court notes that the critical question in the motion for turnover is whether the Funds are properly considered separate property or community property. If the Funds are separate property, then Mr. Hammond would be entitled to his exemption and the motion for turnover would also be subject to FED. R. BANKR. P. Rule 7001 but would clearly fail on the merits. If the Funds have lost their status as separate property, then Mr. Hammond's exemption would not apply, and the motion for turnover would be procedurally proper.[4] The California Supreme Court recently clarified that the "form of title" presumption in CAL. EVID. CODE § 662 does not apply in bankruptcy cases when it conflicts with family law presumptions. Specifically, the California Supreme Court stated:

> [T]he question here is whether the form of title presumption set forth in Evidence Code section 662 applies to the characterization of property in disputes between a married couple and a bankruptcy trustee when it conflicts with the community property presumption set forth in Family Code section 760.
>
> Ultimately, we hold that Evidence Code section 662 does not apply when it conflicts with the Family Code section 760 community property presumption.

*In re Brace*, 9 Cal. 5th 903, 911 (Cal. 2020). As a result, Debtor must rebut the family law presumption that the Funds are community property.

While Debtor asserts that the Account contains "monies that are sourced from Mr. Hammonds VA disability pay," a review of the bank account statements demonstrates that the Account was used for a variety of purposes. For example, as of the date of the petition, the Account had $10,821. If the Court were to apply the "first-in, first-out" rule, the most recent $10,821 deposited into the Account only included $516.97 in VA benefits. Therefore, to the extent the Court were to find it appropriate to engage

---

[4] In other words, the Court must determine whether all or part of the funds can be considered VA funds (which would retain their characterization as separate property and be exempt).

in tracing, nearly all of the Funds would be determined to be community property under a "first-in, first-out" approach.

"But if the separate property and community property interests have been commingled in such a manner that the respective contributions cannot be traced and identified, the entire commingled fund will be deemed community property pursuant to the general community property presumption of section 760." *In re Marriage of Ciprari*, 32 Cal. App. 5th 83, 91–92 (Cal. Ct. App. 2019) (*citing In re Marriage of Braud*, 53 Cal.Rptr.2d 179 (Cal. Ct. App. 1996); *In re Marriage of Cochran*, 104 Cal.Rptr.2d 920 (Cal. Ct. App. 2001); *In re Marriage of Bonvino* 194 Cal.Rptr.3d 754 (Cal. Ct. App. 2015). Here, Debtor has not advanced any clear argumentation or description of an appropriate approach to, or the result of, tracing, and given that, as of the petition date, the most recent deposits in the Account were almost all unrelated to Mr. Hammond's VA benefits, the Court finds it appropriate to deem the Funds to have been commingled to an extent warranting the conclusions that the entirety of the Funds are community property.[5]

Likewise, the Court concludes that the Funds are not subject to an exemption under 38 U.S.C. § 5301(a)(1). While Trustee, may have had the burden of proof on the motion to turnover, the community property presumption under California law shifts the burden to Debtor to provide a tracing analysis to determine the amount of the Funds that should be treated as separate property. Because Debtor has not provided a tracing analysis, and the Court has concluded that the entirety of the Funds should be treated as community property, Mr. Hammond's exemption is not valid. Additionally, because the Funds are community property, a motion for turnover of estate property is procedurally proper under 11 U.S.C. § 521.

---

[5] In Debtor's post-trial brief, Debtor simply identifies the total amount of VA benefit funds that had been deposited into the account during the preceding year ($6,192). This is not sufficient to trace the funds.

- 19 -

IV. <u>CONCLUSION</u>

For the reasons set forth above, and for the reasons set forth on the record, the Court OVERRULES the objection to Debtor's claimed homestead exemption, and GRANTS Trustee's motion for turnover of the Funds in the amount of $10,821. Debtor to turn over $10,821 to Trustee within thirty days of the entry of this order.

IT IS SO ORDERED.

###

Date: March 16, 2022

Mark Houle
United States Bankruptcy Judge